UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH LASHAWN VAUGHN,

                   Petitioner,                                 Case No. 13-cv-13436

v                                                        Honorable Thomas L. Ludington

KEN ROMANOWSKI,

                   Respondent.

_____/

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING CERTIFICATE OF APPEALABILITY**

      Petitioner Joseph Lashawn Vaughn, presently confined at the Macomb Correctional Facility in New Haven, Michigan, filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through his attorney.  Vaughn was convicted by a jury in the Wayne County Circuit Court of two counts of assault with intent to do great bodily harm less than murder, Mich. Comp Laws § 750.84; one count of felon in possession of a firearm, Mich. Comp Laws § 750.224f; and one count of felony-firearm, second offense, Mich. Comp Laws § 750.227b. Vaughn was sentenced to three years, six months to ten years on the assault convictions, two to six years on the felon in possession of a firearm conviction, and he also received a consecutive five year prison sentence on the felony-firearm conviction.  Vaughn contends that he was denied his Sixth Amendment right to a public trial when the judge closed the courtroom to the public during voir dire, that trial counsel was ineffective for failing to object to the closure of the courtroom, and that the trial court erred in refusing to suppress the petitioner's statements to the police.  Respondent has filed an answer to the petition, asserting that the claims are waived, procedurally defaulted and/or lack merit.

Vaughn's petition for a writ of habeas corpus will be denied because he has procedurally defaulted his right to a  public trial claim, and because his remaining claims are meritless.

I

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals in affirming Vaughn's conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009)

This case arises from a shooting that occurred late at night in June 2002.  Emmitt Smith, who was a retired police officer, testified that he picked up his wife from work and arrived back at his home at about 11:45 p.m.  Sometime shortly thereafter, he saw a car parked in front of his home.  The tail end of the car was blocking his driveway and there was a person crouched down in the passenger side with a hat over his or her head.  Smith said he walked over to his neighbor's house and called to him through an open window.

Terrance Haynes testified that he was Smith's neighbor and that he was watching television at around midnight on the night at issue when Smith came over and beckoned to him through an open window.  Haynes went out and spoke with Smith on the porch.  Smith said he asked Haynes if he knew the people in the car, and he responded that he did not.  Haynes said that he saw a person in the car's front passenger seat and that the person was hunched down.  Haynes and Smith talked for a while about other things, and Smith said he wanted to "see what's going on" with the car.  Smith then walked toward the car.

Smith said that he approached the car parked in front of his house while his neighbor walked toward his own car.  Smith noticed that the person in the car was a woman, and he asked her if anything was wrong.  He had a brief conversation with the woman and then turned to walk away.  At this point, he saw a black man dressed in dark clothing—dark shorts and a dark shirt—emerge from a nearby alley with a revolver.  He walked toward Smith and Haynes while holding his gun and stated, "[W]hat are you niggas doing by my mother-fucking car."  Smith told Haynes to get down.  The man with the revolver began to fire at Smith and Haynes, and Smith returned fire.  Smith said the man fired two or three shots and ran into the street.  He turned and fired at Smith after getting to the other side of the street, and Smith again fired back.  The man continued to run away and disappeared down a driveway.  The woman got out of the car and disappeared around the end of the block.  The police arrived just minutes later.

Michael Crosby testified that he was a police officer working on the night at issue with officers Lee Huelsenbeck and Christopher Staton.  He received a call of shots fired at about 10 minutes after midnight that night and responded to the

scene within 5 minutes.  Crosby spoke with Smith at the scene and then ran a check on the plates on the car in front of Smith's house.  The car belonged to defendant, and his address was just a few blocks away.  Crosby said that he and his partners then went to defendant's house.

Huelsenbeck testified that defendant's mother answered the side door and, after he asked if defendant was home, she let them in.  He said they came in onto a landing. The landing led up a few stairs to the kitchen, and there was also a flight of stairs that led to the basement.  Huelsenbeck stated that defendant was at the bottom of the stairs "sweating profusely."  Defendant was wearing blue shorts and a black shirt. Crosby said he asked defendant to come up.  Defendant came up the stairs, and Crosby noticed that he was sweating heavily and was breathing hard. They went into the kitchen, and Crosby asked defendant where he had just come from.  Defendant stated that "he was around the corner and someone tried to steal his car and shot at him several times."  At that point Crosby arrested defendant.

*People v. Vaughn*, 804 N.W.2d 764 (Mich. Ct. App. 2010)(internal footnote omitted).

**A**

Vaughn's jury trial began on January 6, 2003 in the Wayne County Circuit Court.  Of particular relevance here, the trial court judge *sua sponte* ordered that the courtroom be closed during voir dire:

| The Court: | All right, we'll bring the jury in. |
|---|---|
| Court Officer: | Okay, folks you're going to have to clear the courtroom until after the selection of the new jury. |

Jan. 6, 2003 Tr. 7.[1]  The trial court did not explain its reasoning for closing the courtroom, and neither party objected to the closure during voir dire.

After the parties chose a jury, Vaughn's trial proceeded.  After four days of trial, on January 9, 2003, the jury convicted Vaughn guilty of two counts of intent to do great bodily harm less than murder, one count of felon in possession of a firearm, and one count of felony-firearm, second offense.  Jan. 9, 2003 Tr. 3-4, ECF No. 6.

---

[1] It is unclear from the transcript how many people, if any, were forced to leave the courtroom at that time.

**B**

After Vaughn was convicted in Wayne County Circuit Court he filed a direct appeal raising the following issues: (1) whether he was denied his right to a public trial when the trial judge excluded persons other than jurors from the courtroom during the jury voir dire, (2) whether he, by failing to object, forfeited or waived any error resulting from the exclusion of the public from the courtroom during the jury voir dire, and, if so, whether trial counsel rendered ineffective assistance in failing to object; (3) whether the denial of the right to a public trial is a forfeitable error; and (4) whether he was entitled to a new trial as a consequence of the exclusion of the public during the jury voir dire. *People v. Vaughn*, N.W.2d 118 (Mich. 2011). The Michigan Supreme Court ultimately affirmed the petitioner's conviction. *People v. Vaughn*, 821 N.W.2d 288 (Mich. 2012).

**C**

In his federal habeas petition, Vaughn raises the following grounds for relief:

I. THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS TO A PUBLIC TRIAL, BY CLOSING THE COURTROOM FOR JURY SELECTION; ALTERNATIVELY, DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT.

II. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS THE STATEMENTS MADE TO THE POLICE SHORTLY AFTER THE INCIDENT.

Petition 4. This Court will examine each ground in turn.

**II**

In his first grounds for relief, Vaughn claims that he received ineffective assistance of counsel when his trial attorney failed to object to the closure of the courtroom during voir dire. Vaughn's trial began in the Wayne County Circuit Court on January 6, 2003. After reviewing

- 4 -

some preliminary matters, the Court and parties continued on to voir dire.  At that time, the Court

closed the courtroom to all persons who were not parties, attorneys, or prospective jurors:

| The Court: | All right, we'll bring the jury in. |
|---|---|
| Court Officer: | Okay, folks you're going to have to clear the courtroom until after the selection of the new jury. |

Jan. 6, 2003 Tr. 7.  The court did not provide a rationale for closing the courtroom, nor did

Vaughn's attorney object to the closure.  Vaughn claims that his attorney's failure to object to

the closure constituted ineffective assistance of counsel, and that this ineffective assistance

entitles him to a new trial.

### A

First, the applicable standard of review for Vaughn's ineffective assistance of counsel

claim must be determined.  Vaughn presented this claim to both the Michigan Court of Appeals

and the Michigan Supreme Court.

When, as here, a state court decides a petitioner's claim on the merits, 28 U.S.C. §

2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law, as
>        determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented in the
>        State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id*. at 410-11.

Here, the clearly established law applicable to Vaughn's ineffective assistance of counsel claim is the *Strickland* line of precedent.  To establish ineffective assistance of counsel under *Strickland*, a defendant must show both deficient performance by counsel and prejudice.  The United States Supreme Court has explained the *Strickland* inquiry as follows:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Richter*, 131 S. Ct. at 787 (citations omitted). With respect to the ineffectiveness element, "[t]he benchmark for judging any claim for ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

Moreover, when *Strickland* and AEDPA operate "in tandem," as here, the review must be "doubly" deferential. *Richter*, 131 S. Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Id.* (emphasis added). In other words, "AEDPA . . . imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

**B**

On direct appeal, Vaughn argued both *Strickland* prongs: (1) that his trial attorney was constitutionally ineffective by failing to object to the courtroom closure during voir dire, and (2) that this failure prejudiced him. The Michigan Supreme Court reviewed both of these arguments on the merits before determining that Vaughn's *Strickland* claim was meritless. Therefore, in reviewing the Michigan Supreme Court's holding, this Court is limited to the question of whether there is any reasonable argument that Vaughn's trial counsel provided effective assistance of counsel.

**i**

First, with respect to Vaughn's trial attorney's alleged ineffectiveness, the Michigan Supreme Court noted that trial counsel's failure to object to the closure of the courtroom during voir dire could reasonably have been a strategic move:

> The Court of Appeals panel did just that in reviewing defendant's claim. The panel reasoned that "[d]efendant's trial counsel might have reasonably concluded that proceeding with a jury voir dire that was closed to the public benefitted defendant" because "[r]easonable trial counsel might conclude that the potential jurors will be more forthcoming in their responses when the courtroom is closed, that the proceedings will be less likely to be tainted by outside influences, or might simply find the procedure preferable because it will expedite the proceedings."

*People v. Vaughn*, 821 N.W.2d 288, 306 (2012).  The Michigan Supreme Court, in adopting the Michigan Court of Appeals' reasoning, presented reasonable arguments that would show that Vaughn's trial counsel acted reasonably in allowing the closure of the courtroom during voir dire—which would generally be sufficient for this Court, pursuant to AEDPA's exceedingly deferential review standard, to conclude that Vaughn did not receive ineffective assistance of counsel.

Moreover, at the time of Vaughn's trial in 2003, it was unclear whether the Sixth Amendment public-trial right applied to the voir dire process.  Although the United States Supreme Court had held that there is a *First Amendment* right of public access during voir dire in *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510-11 (1984), the concurrence suggested that the Sixth Amendment right to a public trial may be more limited: "If the defendant had advanced a claim that his Sixth Amendment right to a public trial was violated by the closure of the voir dire, it would be important to determine whether the selection of the jury was a part of the 'trial' within the meaning of that Amendment.") (Stevens, J., concurring).  Because Vaughn's counsel at the time of his 2003 trial may have reasonably questioned whether Vaughn had any constitutional right to an open courtroom during voir dire, counsel was not ineffective for failing to object to the closure of the courtroom during voir dire.  *Christian v. Hoffner*, 2014 WL 5847600, at *8 (E.D. Mich. Nov. 12, 2014).[2]

Accordingly, the Michigan Supreme Court's conclusion that Vaughn's trial counsel was not constitutionally ineffective was not unreasonable in light of clearly established federal law.

---

[2] The United States Supreme Court eventually held that the Sixth Amendment right to a public trial attaches during voir dire; however, this case was not decided until about one year after Vaughn's trial.  *See Presley v. Georgia*, 558 U.S. 209, 212 (2010).

**ii**

Because Vaughn's trial counsel was not ineffective for failing to object to the courtroom closure, Vaughn's ineffective assistance of counsel claim is meritless. But even if Vaughn could show that his trial counsel was ineffective, he still would not be entitled to relief because he could not show *Strickland* prejudice.

As noted above, the Michigan Supreme Court concluded that Vaughn did not make the required showing of prejudice under *Strickland*. Its conclusion was premised on two holdings: (1) that prejudice cannot be presumed under *Strickland*, and (2) that Vaughn had no made a showing of actual prejudice under *Strickland*. Both of the Michigan Supreme Court's holdings are reasonable applications of federal law.

**a**

First, the holding that prejudice cannot be presumed under *Strickland* is in accordance with federal law. Prejudice under *Strickland* may only be presumed in three limited circumstances: (1) a complete denial of counsel; (2) state interference with counsel's assistance; and (3) an actual conflict of interest. *See Smith v. Robbins*, 528 U.S. 259, 287 (2000). None of those circumstances are present here, and therefore the Michigan Supreme Court correctly concluded that Vaughn is not entitled to a presumption of prejudice under *Strickland*.

However, Vaughn claims that the Michigan Supreme Court erred in not presuming prejudice under *Strickland*, because federal precedent provides that the closure of a courtroom results in structural error and a presumption of prejudice under the Sixth Amendment. *See Waller v. Georgia*, 467 U.S. 39, 49 (1984) ("The parties do not question the consistent view of the lower federal courts that the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee. We agree with that view . . .

- 9 -

."); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n. 4 (2006) ("[V]iolation of the public-trial guarantee is not subject to harmlessness review because 'the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance'") (citing *Waller*).  Thus, Vaughn requests that this Court combine the *Waller* and *Strickland* prejudice standards.

But the United States Supreme Court's recent opinion in *Premo* forecloses this claim.  In *Premo*, the California state court denied the petitioner's *Strickland* ineffective assistance of counsel claim on the merits.  The Ninth Circuit granted habeas relief because it found the state court's decision was "contrary to" *Arizona v. Fulminante*, 499 U.S. 279 (1991): "the state court's conclusion that counsel's action did not constitute ineffective assistance was an unreasonable application of clearly established law in light of *Strickland* and was contrary to *Arizona v. Fulminante* . . . ."[3]

The Supreme Court reversed, holding that the state court's determination that the petitioner had failed to meet *Strickland*'s burden could not be "contrary to" *Arizona v. Fulminante*:

> The Court of Appeals' contrary holding rests on a case that did not involve ineffective assistance of counsel: *Arizona v. Fulminante*.  To reach that result, it transposed the case into a novel context; and novelty alone—at least insofar as it renders the relevant rule less than "clearly established"—provides a reason to reject it under AEDPA. . . . And the transposition is improper even on its own terms.  According to the Court of Appeals, "*Fulminante* stands for the proposition that the admission of an additional confession ordinarily reinforces and corroborates the others and is therefore prejudicial." Based on that reading, the Court of Appeals held that the state court's decision "was contrary to *Fulminante*." But *Fulminante* may not be so incorporated into the *Strickland* performance inquiry.
>
> A state-court adjudication of the performance of counsel under the Sixth Amendment cannot be "contrary to" *Fulminante*, for *Fulminante*—which involved the admission of an involuntary confession in violation of the Fifth

---

[3] Specifically, the Ninth Circuit concluded that petitioner's counsel's failure to file a motion to suppress before advising Moore to plead guilty resulted in structural error under *Arizona v. Fulminante*, and therefore *Strickland* prejudice was presumed.

> Amendment—says nothing about the *Strickland* standard of effectiveness.  The *Fulminante* prejudice inquiry presumes a constitutional violation, whereas *Strickland* seeks to define one. . . . [Thus a] finding of constitutionally adequate performance under Strickland cannot be contrary to *Fulminante*.

*Premo*.  *Premo* thus stands for the proposition that *Strickland* bears its own distinctive substantive standard for a constitutional violation; it does not merely borrow or incorporate other tests for constitutional error and prejudice.  *Id*. at 743.

In other words, Vaughn is requesting that this Court incorporate the Sixth Amendment right to a public trial into the *Strickland* analysis—a request that must be denied in light of the United States Supreme Court's holding in *Premo*.  Although a claimant may be entitled to a presumption of prejudice when he asserts a Sixth Amendment courtroom-closure claim pursuant to *Waller*, he is not automatically entitled to a presumption of prejudice in the *Strickland* analysis.  In *Strickland*'s prejudice analysis, *Waller* plays no role.  Instead, Vaughn must show actual prejudice to prevail on his *Strickland* claim.[4]

**b**

After determining that *Strickland* prejudice cannot be presumed, the Michigan Supreme Court addressed whether Vaughn had shown actual prejudice.  To meet this burden, Vaughn need to show that there was a "substantial" likelihood that the outcome of his trial would have

---

[4] To support his claim that prejudice should be presumed, Vaughn once again relies on the Sixth Circuit's holding in *Johnson v. Sherry*.  In *Johnson*, the panel majority suggested that if a structural error results from counsel's deficient performance, then prejudice under *Strickland* should be presumed.  586 F.3d at 447.  In his dissent, Judge Kethledge explains the problem with the suggestion that *Strickland* prejudice is presumed with structural errors:

> [T]he majority drives right past the distinction between a *Waller* claim and a *Strickland* one.  What the majority says is true enough for a *Waller* claim, but Johnson's petition undisputedly turns on a *Strickland* one: and *Strickland* repeatedly and unequivocally says that *actual prejudice* is required.

*Id*. at 449 (Kethledge, J. dissent) (emphasis original).  Indeed, Judge Kethledge's position was vindicated by the United States Supreme Court in *Premo*, which prohibits this Court from combining Vaughn's *Waller* and *Strickland* claims.  Thus, to the extent that Vaughn relies on *Johnson* to support his argument that *Strickland* prejudice is presumed, that holding has been implicitly overturned by the Supreme Court in *Premo*.  *See Christian v. Hoffner*, 2014 WL 5847600, at *12 (E.D. Mich. Nov. 12, 2014) (noting that "*Johnson* cannot be reconciled with *Premo*.").

been different, not just that a different outcome was "conceivable." *Richter*, 131 S. Ct. at 792. The Michigan Supreme Court then concluded that Vaughn had not made a showing of actual prejudice under *Strickland*:

> In this case, defendant does not claim that the courtroom's closure during voir dire affected the voire dire process and tainted the ultimate jury chosen. To the contrary, defense counsel actively participated in the voir dire process and expressed satisfaction with the composition of the jury and, thus, we must presume that the resulting jury was a fair and neutral fact-finder. Because defendant cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different," he is not entitled to relief on his ineffective assistance of counsel claim.

*Vaughn*, 821 N.W.2d at 308.

In his petition, Vaughn does not attempt to make any showing of actual prejudice, nor does he attempt to argue that the Michigan Supreme Court's holding on this issue was unreasonable. Accordingly, the Michigan Supreme Court reasonably concluded that, even if Vaughn's counsel had objected to the closure, it is not reasonably likely that the trial result would have been different.

## C

In summary, Vaughn has not shown that he is entitled to relief on his ineffective assistance of counsel claim. He has not shown that the Michigan Supreme Court's denial of his ineffective assistance of counsel claim was an unreasonable application of federal law. Accordingly, Vaughn's ineffective assistance of counsel claim—which is premised on trial counsel's failure to object to the courtroom closure—will be denied.

## III

In his second ground for relief, Vaughn asserts that the courtroom closure during voir dire violated his Sixth Amendment right to a public trial. The Michigan Supreme Court did not address the merits of this argument because it concluded that Vaughn had forfeited this right

- 12 -

when his counsel failed to make a contemporaneous objection.  Therefore, in failing to make a contemporaneous objection, Vaughn procedurally defaulted his courtroom claim.

### A

In his habeas petition, Vaughn first asserts that the Sixth Amendment right to a public trial cannot be waived.  As explained above, Vaughn's trial counsel did not object—or even question—the trial court's closure of the courtroom during voir dire.  Vaughn asserts that the right to a public trial is a fundamental constitutional right, and his attorney's silence was insufficient to constitute a waiver of that right.

The United States Supreme Court has concluded that the right to a public trial can be waived: "[T]he Sixth Amendment right to a trial that is 'public,' provide[s] benefits to the entire society more important than many structural guarantees; but if the litigant does not assert [the right] in a timely fashion he is foreclosed."  *Freytag v. Commissioner*, 501 U.S. 868, 896 (1991).  The question, then, is whether a defendant may waive his right to a public trial through silence, rather than an affirmative waiver.

The Sixth Circuit has answered this question in the affirmative.  "While we agree that the right to a public trial is an important structural right, it is also one that can be waived when a defendant fails to object to the closure of the courtroom . . . ."  *Johnson*, 586 F.3d at 444[5]; *see also Christian*, 2014 WL 5847600, at *5 (E.D. Mich. Nov. 12, 2014) ("In other words, the fact that the denial of the right to a public trial is a structural error does not mean that the claim cannot be waived by Petitioner's failure to object.  Although structural errors are *per se*

---

[5] Other circuits have reached the same conclusion.  *See United States v. Reagan*, 725 F.3d 471, 488-89 (5th Cir. 2013) (defendants waived the claim that their right to a public trial was violated by the closing of the courtroom during voir dire, and the claim was unreviewable on appeal); *United States v. Christi*, 682 F.3d 138, 142-43 (1st Cir. 2012) (by counsel's failure to object, defendant waived any claim of error in the court limiting public access to the courtroom during most of the jury instructions); *United States v. Rivera*, 682 F.3d 1223, 1232 (9th Cir. 2012) (defendant may forfeit the right to a public trial by either "affirmatively waiving it or by failing to assert it in a timely fashion").

- 13 -

reversible and not subject to harmless error review, such errors are nevertheless subject to the general rules of waiver, forfeiture, and default."). Thus, when a defendant fails to object to the closure, "his claim is procedurally defaulted unless he can show cause and prejudice for the default." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Accordingly, Vaughn forfeited his right to a public trial by failing to object to the courtroom closure.

## B

Because Vaughn did not make a contemporaneous objection to the courtroom closure, the Michigan Court of Appeals determined that he had forfeited this claim and did not address his courtroom closure claim on the merits.[6]

When, as here, the state courts clearly and expressly rely on an "independent and adequate state procedural bar," federal habeas review is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. If a petitioner does not show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Vaughn seeks to establish cause to excuse the default by arguing that his trial counsel was constitutionally ineffective for failing to object to the closure of the courtroom during voir dire. However, as explained above, Vaughn's ineffective assistance of counsel claim is meritless, and cannot establish cause to excuse his procedural default.

---

[6] Even though the Michigan Supreme Court concluded that Vaughn had forfeited his courtroom closure claim, it nonetheless reviewed the claim for plain error. *Vaughn*, 821 N.W.2d at 303-04. However, plain error review is not an adjudication on the merits for purposes of AEDPA. *Frazier v. Jenkins*, 2014 WL 5419936, at *7 n. 5 (6th Cir. 2014) (citing *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007)).

C

Vaughn procedurally defaulted his courtroom closure claim, and he has not established cause to excuse that default.[7]  And because the claim is procedurally defaulted, this Court is precluded from reviewing the merits of the claim.  Accordingly, Vaughn's courtroom closure claim will be denied.

IV

Vaughn next contends that the trial court erred in failing to suppress the statement that he made to the police shortly after the shooting on the grounds that he had not been advised of his Miranda rights prior to making the statement.  Vaughn had moved for the suppression of the statement during the middle of trial.  The trial judge denied the motion on the ground that Vaughn was not in custody when he made the statement; therefore, it was unnecessary for the police to advise Vaughn of his Miranda warnings.

The Michigan Court of Appeals rejected Vaughn's claim:

Here, the trial court did not err when it determined that defendant was not in custody.  The police officers went to defendant's house to investigate whether defendant had any involvement in the shooting.  Although the officers entered defendant's home, they did so with defendant's mother's permission.  Further, there is no evidence that the police had their weapons drawn or were otherwise asserting control over the scene.  Indeed, the officers were in plain clothes.  When the police entered defendant's home, at least two of the officers saw defendant at the foot of the basement steps, and [Officer] Crosby asked him to come up to the kitchen.  There is no evidence that Crosby ordered defendant to come up or otherwise acted in a way that would give the impression that defendant was not free to disregard the request.  The officers also questioned defendant in his own home rather than in a formal police setting.  *See People v. Coomer*, 245 Mich.App. 206, 220, 627 N.W.2d 612 (2001) (noting that an interrogation at a suspect's home is usually viewed as noncustodial).  They did not handcuff defendant or otherwise restrict his movement. Finally, defendant's mother was present with him when the police officers questioned him.  Under the totality of these circumstances, we cannot conclude that a reasonable person would not have

---

[7] Nor has Vaughn presented new, reliable evidence to establish that he is actually innocent of these crimes, and therefore a "miscarriage of justice" would not occur if this Court declined to review Vaughn's procedurally defaulted public-trial claim on the merits.  *Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006).

felt at liberty to discontinue the interrogation and leave. *Yarborough*, 541 U.S. at 663, 124 S.Ct. 2140.

*People v. Vaughn*, 804 N.W.2d 764, 769 (Mich. Ct. App. 2010).

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

   1.    the person must be warned that he has a right to remain silent;

   2.    that any statement he does make may be used against him; and,

   3.    that he has a right to the presence of an attorney, either appointed or retained.

*Miranda*, 384 U.S. at 444.

Police officers, however, are not required to administer *Miranda* warnings to every person whom they question; nor are they required to administer *Miranda* warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" For purposes of *Miranda*, "custody" requires a "significant deprivation of freedom." *See Mason v. Mitchell*, 320 F.3d 604, 632 (6th Cir. 2003).

Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: (1) what were the circumstances surrounding the interrogation? and (2) given those circumstances, would a

reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave? *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The initial determination of whether a suspect is in custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officer. *See Stansbury v. California*, 511 U.S. 318, 323 (1994). Stated differently, a policeman's unarticulated plan has no bearing upon whether a suspect is "in custody," so as to require *Miranda* warnings. Instead, the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

The Michigan Court of Appeals reasonably concluded that Vaughn was not in custody when he made his statements to the police. Generally, questioning occurring at a defendant's home does not present a police-coercive environment. *See United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (citing *United States v. Panak*, 552 F.3d 462, 467 (6th Cir. 2009); *United States v. Salvo*, 133 F.3d 942, 950 (6th Cir. 1998)). However, the fact that the questioning occurs in a defendant's home is not dispositive on the issue of whether defendant is in "custody." *See Orozco v. Texas*, 394 U.S. 324, 327 (1969) (holding that a defendant was in custody when police officers entered his bedroom and questioned him during early morning hours.).

Therefore, courts must analyze the following factors to determine whether a person is in custody when they are interrogated in their home:

> (1) [T]he purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*Salvo*, 133 F.3d at 950.

In the present case, the Michigan Court of Appeals' ruling that Vaughn was not subjected to custodial interrogation, so as to require the giving of *Miranda* warnings, was not an unreasonable application of clearly established federal law.  Although the police officers entered Vaughn's home to investigate a shooting, they did so with Vaughn's mother's consent.  There was no evidence that the police had their weapons drawn or had otherwise asserted control over the scene.  Two of the officers saw Vaughn at the foot of the basement steps.  Officer Crosby asked Vaughn to come up to the kitchen, but there was no evidence that Crosby ordered him to come upstairs or otherwise acted in a way that would give the impression that Vaughn was not free to disregard the request.  Vaughn was questioned in his own home rather than in a formal police setting.  The police did not handcuff him or otherwise restrain him.  Finally, Vaughn's mother was present with him when the police officers questioned him.  Based on the totality-of-the-circumstances, Vaughn was not in custody during his home interview. *See Hinojosa*, 606 F. 3d at 883-84.  Accordingly, Vaughn is not entitled to habeas relief on his final claim.

## V

Before Vaughn may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to

- 18 -

proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id*. at 336-37.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484.

Vaughn has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.

## VI

Accordingly, it is **ORDERED** that Vaughn's petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

> s/Thomas L. Ludington
> THOMAS L. LUDINGTON
> United States District Judge

Dated: November 21, 2014

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 21, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS